STATE OF NORTH CAROLINA v. RAPHEL SCOBER

No. 844SC541

(Filed 7 May 1985)

1. **Criminal Law §§ 34, 60.2— fingerprint card—reference to prior arrest concealed—admissible**

   In a prosecution for breaking and entering and felonious larceny, there was no error in the admission of defendant's 1979 fingerprint identification card with all information relating to his prior arrest concealed.

2. **Criminal Law § 93— defendant's exhibition of palm to jury—not allowed during State's case in chief**

   In a prosecution for breaking and entering and felonious larceny, the trial court did not err by denying defendant permission to exhibit his palm to the jury immediately after the State introduced a latent fingerprint and a fingerprint identification card during its case in chief. Defendant was attempting to exhibit his palm so the jury could determine whether it corroborated the State's evidence, and the trial judge correctly ruled that exhibiting defendant's palm would constitute presenting evidence.

3. **Criminal Law § 138; Constitutional Law § 48— effective assistance of counsel—failure to argue mitigating factors**

   Defendant was not denied effective assistance of counsel because his attorney did not argue mitigating factors at sentencing where he did not bring forth on appeal any evidence of factors in mitigation which should have been argued.

APPEAL by defendant from *Allsbrook, Judge.* Judgment entered 6 January 1984 in Superior Court, DUPLIN County. Heard in the Court of Appeals 7 February 1985.

Defendant was charged on an indictment, proper in form, with felonious breaking or entering and felonious larceny. He was found guilty and sentenced to consecutive terms of ten and five years.

The State's evidence tended to show the following. A. J. Cavenaugh, owner of a retail jewelry store, testified that when he entered his jewelry store on 15 September 1983 two of his display cases, which had been on the counter, were on the floor, empty. The window in the back of the store was broken. Missing were eighty chains, half of which were fourteen carat gold overlay, five high school class rings, a cigarette lighter and ten dollars in quarters. Cavenaugh estimated the value of the chains to be approximately $3,000. The chains were manufactured by Krementz, and Cavenaugh did not believe any other store in Duplin or Pender counties sold Krementz chains. The display cases had been cleaned every two or three days. After Cavenaugh saw that the chains were missing he notified Richard Honeycutt, the owner of a pawn shop, to look out for the chains. Cavenaugh later identified three chains, which had been pawned in Honeycutt's shop, as identical to the stolen chains.

Leon Sloan testified that on 18 September 1983 defendant gave him a gold chain, which he then pawned at Honeycutt's shop. Autry Stevens testified that on 22 September 1983 defendant sold him a gold chain for ten dollars and the following day, another chain for seven dollars. Stevens pawned the first chain and gave Jeffrey Carter the second chain to pawn. Honeycutt testified he received the three chains from Sloan, Stevens and Carter and gave them to the police.

Detective N. E. "Tom" Rich of the Wallace Police Department dusted Cavenaugh's display cases for fingerprints and placed the latent prints on a card. Rich interviewed Sloan and Stevens and then arrested defendant. After Rich read defendant his rights, defendant signed a waiver of rights form and denied selling jewelry or being in Cavenaugh's Jewelry Store within the past two months.

Wallace Police Chief Roscoe Rich, testifying as an expert witness in fingerprint and palm print identification, compared the latent prints taken from Cavenaugh's display box with the prints from a fingerprint identification card made of defendant's prints in 1979 and stated that, in his opinion, defendant had made the prints on the display case. Rich found seventeen points of similarity, more than required for positive identification. Rich testified that fingerprints and palm prints do not change from birth to death.

Defendant did not testify.

The jury returned a verdict of guilty of felonious breaking or entering and felonious larceny.

From the judgment and sentences of five and ten years, to run consecutively, defendant appeals.

*Attorney General Edmisten by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*Appellate Defender Adam Stein by Assistant Appellate Defender Lorinzo L. Joyner for defendant-appellant.*

PARKER, Judge.

[1] In his first assignment of error defendant argues that admitting into evidence a 1979 fingerprint identification card, with all information relating to defendant's prior arrest concealed, was prejudicial error because it suggested prior criminal misconduct. We do not agree.

Defendant had previously been arrested and fingerprinted on 2 March 1979 by Detective Baker of the Duplin County Sheriff's Department. On voir dire, out of the presence of the jury, Baker explained how he fingerprinted defendant and testified that the 2 March 1979 fingerprint identification card had not been altered except for some notations on the margin. The trial judge covered the information on the top and back of the card and instructed the District Attorney not to mention the occasion of taking the fingerprints on 2 March 1979. At trial Detective Baker identified the fingerprint card as the card he rolled with defendant's prints on 2 March 1979. No mention was made of defendant's arrest on that date.

The question of admissibility of a fingerprint identification card made pursuant to a prior, unrelated arrest was addressed by our Supreme Court in *State v. Jackson*, 284 N.C. 321, 200 S.E. 2d 626 (1973). In *Jackson* the State's evidence tended to show that the defendant entered the victim's house through her kitchen window and raped her. A latent fingerprint was found on the windowsill. The trial judge admitted into evidence a fingerprint identification card made in 1962, introduced for the purpose of identifying the latent fingerprint on the victim's windowsill. The fingerprint identification card was altered so that it did not list an arrest, indictment or conviction. The defendant argued that the admission of the fingerprint identification card was prejudicial error because it constituted evidence of another separate crime. Our Supreme Court held that the 1962 fingerprint identification card was admissible, and any inference arising from testimony that fingerprinting is customary when someone is arrested was not of such force as to prejudicially influence the jury. *Accord, State v. Gainey*, 32 N.C. App. 682, 233 S.E. 2d 671, *review denied* 292 N.C. 732, 235 S.E. 2d 786 (1977); *State v. McNeil*, 28 N.C. App. 347, 220 S.E. 2d 869, *review denied*, 289 N.C. 618, 223 S.E. 2d 395 (1976). *Cf. State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892 (1970), which held that the admission into evidence of a mug shot of defendant, with police identification information obliterated, was permissible.

Applying *Jackson*, we do not believe admission of the fingerprint identification card in the instant case in any way violated the longstanding general rule in North Carolina that "in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense." *State v. McClain*, 240 N.C. 171, 173, 81 S.E. 2d 364, 365 (1954).

[2] In his second assignment of error defendant argues that the trial court erred in ruling that defendant's exhibition of his palm print would constitute his having presented evidence.

When the State offered into evidence the latent fingerprint, the fingerprint identification card and photographic enlargements, defendant's counsel requested permission for defendant to exhibit his own palm to the jury. The State objected to defendant's exhibiting evidence during the State's case in chief; the trial judge

sustained the objection and explained that defendant could offer evidence at the close of the State's evidence, at which time the State's exhibits could be recirculated among the jury. Defendant contends the trial judge erred in ruling that presenting his palm print to the jury would be offering evidence. We do not agree. In *State v. Hall*, 57 N.C. App. 561, 564, 291 S.E. 2d 812, 814 (1982), this court formulated the following rule for determining whether an object has been put into evidence:

> [T]he proper test as to whether an object has been put in evidence is whether a party has offered it as substantive evidence or so that the jury may examine it and determine whether it illustrates, corroborates, or impeaches the testimony of a witness. If the party shows it to a witness to refresh his recollection, it has not been offered into evidence.

Clearly, defendant was attempting to exhibit his palm so the jury could examine it to determine whether it corroborated the State's evidence, and the trial judge ruled correctly.

[3] In his last assignment of error defendant argues that he was denied effective assistance of counsel because his counsel did not present any factors in mitigation at the sentencing hearing.

Defendant's right to assistance of counsel in a noncapital felony case is guaranteed by the Sixth Amendment to the United States Constitution applied to the States by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963), and Article 1, Sections 19 and 23 of the North Carolina Constitution. The standard for determining whether there has been effective assistance of counsel set forth by the United States Supreme Court in *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed. 2d 763 (1970), was adopted in North Carolina in *State v. Vickers*, 306 N.C. 90, 291 S.E. 2d 599 (1982). Under *McMann* the test is whether the assistance given was "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. at 771, 90 S.Ct. at 1449, 25 L.Ed. 2d at 773.

Defendant contends his counsel should have argued factors in mitigation at the sentencing hearing. Defendant, however, has not brought forth any evidence of factors in mitigation which should have been argued. Absent some evidence of mitigating factors, we

cannot say defendant was denied effective assistance of counsel. Defendant has failed to meet the "stringent standard of proof on the question of whether an accused has been denied Constitutionally effective representation." *State v. Sneed*, 284 N.C. 606, 613, 201 S.E. 2d 867, 871 (1974).

We have carefully considered defendant's assignments of error and find

No error.

Judges ARNOLD and EAGLES concur.