McCULLOUGH, Judge.
 

 *517
 
 Eric Lamar Lindsey ("defendant") appeals from judgments entered upon his convictions for habitual driving while impaired and driving while license revoked for impaired driving. For the following reasons, we find no error.
 

 I.
 
 Background
 

 On 27 May 2014, a Union County Grand Jury indicted defendant on charges of DWI, habitual DWI, and DWLR. The underlying DWI was later dismissed as the State chose to proceed on the more serious habitual DWI charge.
 

 Prior to the case coming on for trial, defendant filed a motion to suppress evidence and dismiss with a supporting affidavit on 20 January 2015. Defendant's motion came on for hearing in Union County Superior Court before the Honorable W. David Lee on 21 January 2015. Although defendant's motion sought to suppress evidence of the stop, his statements, and his arrest, defendant indicated at the hearing that he was only focusing on the probable cause to arrest. On 26 January 2015, the trial court filed an order denying defendant's motion to suppress.
 

 Defendant's case was then called for jury trial on 13 April 2015 in Union County Superior Court before the Honorable Martin McGee. The State's only witness was Officer Timothy Sykes, who pulled defendant over and arrested defendant in the early morning hours of 21 February 2014. Officer Sykes' testimony tended to show that at approximately 2:47 in the morning on 21 February 2014, he pulled behind defendant at a stoplight. Officer Sykes then ran the tag on defendant's vehicle and determined it was expired. Officer Sykes initiated a traffic stop at that time. Defendant made two turns and parked in a handicap spot in a McDonald's parking lot. Officer Sykes did not notice any driving mistakes. Once Officer Sykes approached the vehicle, defendant informed the officer that his license was suspended for DWI and provided the officer with an identification card. Officer Sykes noticed a medium odor of alcohol coming from defendant's breath and that defendant's eyes were red and glassy. Officer Sykes then returned to his patrol car, ran defendant's information, and confirmed that defendant's license was suspended for DWI. Once backup arrived, Officer Sykes returned to defendant's vehicle and asked defendant to exit the vehicle in order to perform field sobriety tests. Defendant complied and exited his vehicle without any problem. Officer Sykes first performed a
 
 *499
 
 horizontal gaze nystagmus test and noted 5 out of 6 indicators of impairment. Officer
 
 *518
 
 Sykes then made multiple attempts to conduct a portable breath test but defendant did not provide an adequate breath sample to register on the device. Upon further questioning, defendant informed Officer Sykes that he had consumed three beers at approximately 6:00 the evening before. Based on his observations of defendant, Officer Sykes formed the opinion that defendant had consumed a sufficient quantity of alcohol so as to appreciably impair both his mental and physical faculties and placed defendant under arrest. Defendant later refused a breath test at the police station. Officer Sykes further testified that he was with defendant for approximately two hours and his opinion that defendant was appreciably impaired did not change.
 

 During the State's evidence, and out of the presence of the jury, defendant stipulated to prior DWI convictions, at least in part to keep evidence of the prior convictions from being mentioned in front of the jury. Defendant also stipulated that his license was revoked for a DWI and pled guilty to DWLR as part of a plea arrangement. The trial judge accepted the plea, leaving only the habitual DWI charge for the jury. Upon further discussions, it was agreed that the case would proceed as a normal DWI case, since defendant had already stipulated to prior DWI convictions supporting the habitual portion of the habitual DWI charge.
 

 At the close of the State's evidence, and again at the close of all the evidence, defendant moved to dismiss. The trial judge denied those motions.
 

 On 14 April 2015, the jury returned a verdict finding defendant guilty of DWI. Upon the guilty verdict, the trial judge entered judgment sentencing defendant to a term of 25 to 39 months for habitual DWI. The trial judge also entered judgment imposing a consecutive two day sentence for DWLR for impaired driving. Defendant gave notice of appeal orally in court.
 

 II.
 
 Discussion
 

 Defendant now raises the following three issues on appeal: whether the trial court (1) erred in denying his motion to suppress; (2) erred in denying his motions to dismiss; and (3) erred in denying him the final argument to the jury.
 

 1.
 
 Motion to Suppress
 

 Defendant first argues the trial court erred in denying his motion to suppress and dismiss because the totality of the circumstances in this case were insufficient to constitute probable cause to arrest him for DWI.
 

 *519
 
 Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). "The trial court's conclusions of law ... are fully reviewable on appeal."
 
 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000).
 

 Our Courts have long recognized that
 

 [a]n arrest is constitutionally valid when the officers have probable cause to make it. Whether probable cause exists depends upon "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense."
 

 State v. Streeter
 
 ,
 
 283 N.C. 203
 
 , 207,
 
 195 S.E.2d 502
 
 , 505 (1973) (quoting
 
 Beck v. Ohio
 
 ,
 
 379 U.S. 89
 
 ,
 
 85 S.Ct. 223
 
 ,
 
 13 L.Ed.2d 142
 
 (1964) );
 
 see also
 

 State v. Eubanks
 
 ,
 
 283 N.C. 556
 
 , 559-60,
 
 196 S.E.2d 706
 
 , 708 (1973). This Court has further explained that:
 

 "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."
 
 Illinois v. Gates
 
 ,
 
 462 U.S. 213
 
 , 244 n. 13,
 
 103 S.Ct. 2317
 
 ,
 
 76 L.Ed.2d 527
 
 (1983). "Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances strong in themselves to warrant a cautious man in believing the accused to be guilty."
 

 *500
 

 State v. Streeter
 
 ,
 
 283 N.C. 203
 
 , 207,
 
 195 S.E.2d 502
 
 , 505 (1973) (citation omitted). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances."
 
 Maryland v. Pringle
 
 ,
 
 540 U.S. 366
 
 , 371,
 
 124 S.Ct. 795
 
 ,
 
 157 L.Ed.2d 769
 
 (2003).
 

 State v. Teate
 
 ,
 
 180 N.C.App. 601
 
 , 606-607,
 
 638 S.E.2d 29
 
 , 33 (2006).
 

 The trial court's order in this case contained the following findings of fact:
 

 1. On February 21, 2014, at approximately 2:53 a.m. Patrol Officer Timothy Sykes ("Officer Sykes") ...
 

 *520
 
 observed another vehicle as it proceeded ahead of him on the highway. Officer Sykes ran the tag on the vehicle and determined that the tag had expired.
 

 2. Officer Sykes then activated his blue lights and followed the defendant, who properly signaled both right and left turns before entering a McDonald's parking lot where he parked well within the lines of a space marked for handicapped. Officer Sykes approached the vehicle and observed the defendant to be the driver and sole occupant of the Ford Taurus vehicle he was operating. Upon Officer Sykes's request the defendant produced only an identification card, admitting to the officer that his license was suspended. Officer Sykes smelled a moderate odor of alcohol coming from the defendant. He also observed the defendant's eyes to be red and glassy.
 

 3. Officer Sykes, trained in the administration of the horizontal gaze nystagmus ("HGN"), administered the HGN test to the defendant, telling the defendant not to move his head and to follow the officer's finger with his eyes only. Of the six clues, or indicators of impairment about which Officer Sykes was trained and knowledgeable, he observed five such indications of impairment upon administering the test to the defendant.
 

 4. Officer Sykes then directed the defendant to blow into a properly tested, calibrated and approved alco-sensor device. The defendant failed on at least three successive occasions to provide a sufficient sample of breath to enable a reading on the alco-sensor. Officer Sykes treated these failures as a refusal to submit to the alco-sensor.
 

 5. The defendant admitted to Officer Sykes that he had consumed three Milwaukee Lite beers, but informed the officer that he had last consumed around 6:00 p.m. that afternoon, approximately 9 hours before the stop.
 

 6. Following these events, Officer Sykes arrested the defendant for driving while impaired.
 

 Based on these findings, the trial court concluded as follows:
 

 *521
 
 2. Under the totality of the circumstances, and after carefully examining the attenuating facts and circumstances, including the officer's observations prior to arrest, the officer's administration of the HGN test, the defendant's responses to the officer's investigatory questions, and the refusal of the defendant to submit to the alco-sensor, the Court concludes that the facts and circumstances justified the officer's determination that reasonable grounds existed for believing that the defendant had committed an implied-consent offense.
 

 3. Under the totality of the circumstances Officer Sykes possessed sufficient reliable and lawfully-obtained information at the time of the defendant's arrest to constitute a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the defendant was guilty of driving while impaired. The arrest and seizure of the defendant, as well as the evidence gathered by Officer Sykes was justified under the law.
 

 4. The stop of the defendant's vehicle was based upon a reasonable articulable suspicion ... and the subsequent arrest of the defendant did not violate the defendant's rights under the Fourth Amendment of the United
 
 *501
 
 States Constitution, Article I, Section 20 of the North Carolina Constitution, or the provisions of Chapter 15A of the North Carolina General Statutes.
 

 Although defendant seems to take issue with the trial court's failure to issue findings of fact regarding police lights flashing during the HGN test, or the effect the flashing police lights may have had on the HGN test, defendant does not challenge any particular finding of fact issued by the trial court. Instead, defendant challenges the trial court's determination that its findings of fact support the conclusion that there was probable cause to arrest defendant for DWI. In doing so, defendant emphasizes that the trial judge thought this was "a really close case." Defendant then distinguishes the present case from cases in which this Court has upheld trial courts' probable cause determinations by identifying circumstances in those cases that were not present in this case; namely, that defendant was not driving poorly, did not commit a traffic violation, was not involved in an accident, did not have slurred speech, had no problem exiting the vehicle, was steady on his
 
 *522
 
 feet, was cooperative and able to follow directions, and there was not an open container of alcohol visible in the vehicle.
 
 See
 

 Teate
 
 ,
 
 180 N.C.App. at 604-606
 
 ,
 
 638 S.E.2d at 32-33
 
 (probable cause to arrest for DWI where the defendant failed to stop at a license checkpoint, there was an odor of alcohol on the defendant, the defendant admitted she had been drinking, the defendant's eyes were "glassy" and she had slurred speech, the defendant had difficulty performing counting tests, and breath samples tested with an alco-sensor instrument indicated intoxication);
 
 Richardson v. Hiatt
 
 ,
 
 95 N.C.App. 196
 
 , 200,
 
 381 S.E.2d 866
 
 , 868 (1989) (probable cause to arrest for impaired driving where there was a strong odor of alcohol on the defendant, the defendant had been involved in a one-vehicle accident in excellent driving conditions in the middle of the afternoon, and the defendant claimed to have fallen asleep);
 
 State v. Simmons
 
 ,
 
 205 N.C.App. 509
 
 , 525-26,
 
 698 S.E.2d 95
 
 , 106-107 (2010) (the defendant was driving poorly, there was a strong odor of alcohol coming from the defendant's breath, the defendant admitted he had consumed a couple of beers, there were beer bottles in the passenger area of the vehicle, one of which was half full, the defendant's eyes were red and glassy, the defendant's speech was slightly slurred, and alco-sensor tests of the defendant's breath were positive for alcohol; but probable cause to arrest was upheld solely based on the defendant's possession of an open container of alcohol in the vehicle). Thus, defendant contends the evidence of impairment in the present case does not rise to the level of the evidence in other cases. Defendant analogizes the facts in the present case to the facts in
 
 State v. Sewell
 
 ,
 
 239 N.C.App. 132
 
 ,
 
 768 S.E.2d 650
 
 (
 
 available at
 

 2015 WL 67193
 
 ),
 
 disc. rev. denied
 
 ,
 
 368 N.C. 239
 
 ,
 
 768 S.E.2d 851
 
 (2015), in which this Court affirmed the trial court's determination that there was not probable cause to arrest the defendant for DWI. Defendant contends that there was more evidence of impairment in
 
 Sewell
 
 then in the present case and, yet, there still was not probable cause to arrest for DWI in
 
 Sewell
 
 .
 

 We are not persuaded by defendant's arguments. Simply because the facts in this case do not rise to the level of the facts in the cases distinguished by defendant does not mean the trial court's findings in this case are insufficient to support a probable cause determination. "Whether probable cause exists to justify an arrest depends on the 'totality of the circumstances' present in each case."
 
 State v. Sanders
 
 ,
 
 327 N.C. 319
 
 , 339,
 
 395 S.E.2d 412
 
 , 425 (1990)
 
 cert. denied
 
 ,
 
 498 U.S. 1051
 
 ,
 
 111 S.Ct. 763
 
 ,
 
 112 L.Ed.2d 782
 
 (1991). The evidence in this case supports the following findings by the trial court: the officer smelled a moderate odor of alcohol coming from defendant and observed defendant's eyes to be red and glassy; the officer observed five of six indicators of impairment upon administering
 
 *523
 
 an HGN test to defendant; and defendant admitted to the officer that he had consumed three beers hours before the stop. Without even considering defendant's multiple failed attempts to provide an adequate breath sample on an alco-sensor device, we hold the trial court's findings support its conclusion that there was probable cause to arrest defendant for DWI.
 
 *502
 
 Additionally, we note that
 
 Sewell
 
 is not controlling in the present case. First and foremost,
 
 Sewell
 
 is an unpublished opinion and does not constitute controlling legal authority.
 
 See
 
 N.C. R. App. P. 30(e)(3) (2016). Second, although some facts are similar, there are key distinctions between the facts in
 
 Sewell
 
 and the present case. In
 
 Sewell
 
 , the defendant was stopped at a checkpoint and a trooper detected a strong odor of alcohol "emanating from [the] defendant's vehicle, not from the defendant, who was accompanied by a passenger."
 
 2015 WL 67193
 
 at *3. The trooper also observed that the defendant had red and glassy eyes, the defendant exhibited six of six indicators on the HGN test, and the defendant tested positive for the presence of alcohol on two alco-sensor breath tests. The trial court, however, determined the facts and circumstances known to the trooper were insufficient to establish probable cause to believe the defendant had committed the offense of DWI where the trooper "did not testify that [the] defendant herself was the source of the odor of alcohol[ ]" and the defendant did not have slurred speech, retrieved her license and registration without difficulty or delay, was steady on her feet, was cooperative, and exhibited no signs of intoxication on the "[o]ne-[l]eg [s]tand" and "[w]alk and [t]urn" tests.
 
 Id
 
 . This court affirmed the grant of the defendant's motion to suppress.
 
 Id
 
 . Contrary to the facts in
 
 Sewell
 
 , the evidence in this case was that defendant was the sole occupant of the vehicle and the officer smelled a medium odor of alcohol coming from defendant's breath. We find this factual discrepancy to be significant.
 

 It is the trial judge's role to weigh the credibility of the witnesses and the evidence. Here, the evidence supports the trial court's findings, which in turn support the conclusion that the officer had probable cause to arrest defendant for DWI.
 

 2.
 
 Motion to Dismiss
 

 Defendant also argues the trial judge erred in denying his motions to dismiss the DWI charge for insufficiency of the evidence.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court
 
 *524
 
 is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' "
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (quoting
 
 State v. Barnes
 
 ,
 
 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ),
 
 cert. denied
 
 ,
 
 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied
 
 ,
 
 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995).
 

 Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.
 

 Fritsch
 
 ,
 
 351 N.C. at 379
 
 ,
 
 526 S.E.2d at 455
 
 (citations and quotation marks omitted).
 

 Relevant to this case, the offense of impaired driving is defined as follows: "[a] person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State ... [w]hile under the influence of an impairing substance[.]"
 
 N.C. Gen. Stat. § 20-138.1
 
 (a)(1) (2015). Thus, "[t]he essential elements of DWI: are (1) [d]efendant
 
 *503
 
 was driving a vehicle; (2) upon any highway, any street, or any public vehicular area within this State; (3) while under the influence of an impairing substance."
 
 State v. Mark
 
 ,
 
 154 N.C.App. 341
 
 , 345,
 
 571 S.E.2d 867
 
 , 870 (2002),
 
 aff'd per curiam
 
 ,
 
 357 N.C. 242
 
 ,
 
 580 S.E.2d 693
 
 (2003). The only element at issue in this case is the third element, the impairment of defendant.
 

 This Court has explained that "[b]efore [a] defendant can be convicted under
 
 N.C. Gen. Stat. § 20-138.1
 
 (a)(1), the State must prove
 
 *525
 
 beyond a reasonable doubt that defendant had ingested a sufficient quantity of an impairing substance to cause his faculties to be appreciably impaired. This means a finding that defendant's impairment could be recognized and estimated."
 
 State v. Phillips
 
 ,
 
 127 N.C.App. 391
 
 , 393,
 
 489 S.E.2d 890
 
 , 891 (1997) (internal citation omitted). In
 
 Phillips
 
 , this Court held that there was sufficient evidence the defendant was appreciably impaired to satisfy the elements of
 
 N.C. Gen. Stat. § 20-138.1
 
 (a)(1) when reviewing the record in the light most favorable to the State where there was evidence of erratic driving, a pronounced odor of alcohol on the defendant, and the defendant admitted to drinking significantly earlier in the evening.
 
 Id
 
 . at 393,
 
 489 S.E.2d at 892
 
 .
 

 Similar to his argument concerning the denial of his motion to suppress, defendant contends the evidence of intoxication in this case is distinguishable from evidence in prior cases in which our courts determined there was sufficient evidence of impairment to survive motions to dismiss.
 
 See
 

 id
 
 . ;
 
 State v. Norton
 
 ,
 
 213 N.C.App. 75
 
 , 79-80,
 
 712 S.E.2d 387
 
 , 390-91 (2011) (sufficient evidence of impairment where there were witnesses to erratic driving, the defendant exhibited superhuman strength when officers attempted to apprehend him, a witness smelled alcohol on the defendant, and blood tests established the defendant's alcohol and cocaine use);
 
 State v. Scott
 
 ,
 
 356 N.C. 591
 
 , 597-98,
 
 573 S.E.2d 866
 
 , 869-70 (2002) (sufficient evidence of impairment where there was a strong odor of alcohol in the defendant's vehicle, the officer observed an open container of beer in the passenger area of the vehicle, the defendant's coat was wet from what appeared to be beer, and the defendant's speech was slurred). Defendant emphasizes that in those cases, "the defendant was involved in an accident, there was evidence of faulty driving or erratic behavior, alcohol was found in the car, and/or there was substantial evidence that the defendant was over the legal limit for alcohol[,]" facts which are not present in this case. Defendant instead compares his case to
 
 State v. Hough
 
 ,
 
 229 N.C. 532
 
 ,
 
 50 S.E.2d 496
 
 (1948), in which the Court held there was insufficient evidence of impairment to raise more than a suspicion or conjecture of impairment where the only evidence was from two officers who arrived at the scene of an accident approximately 25 minutes after the accident, one of whom testified that he opined the defendant driver was intoxicated based on the fact that he smelled something on the defendant's breath, and the other who testified he was of the opinion the defendant was intoxicated or under the influence of something.
 
 Id
 
 . at 533-34,
 
 50 S.E.2d at 496-97
 
 . But in
 
 Hough
 
 , both officers testified that they were unsure whether the defendant's condition that night was the result of impairment or the accident.
 
 Id
 
 . at 533,
 
 50 S.E.2d at 497
 
 . The Court reasoned that "[i]f the witnesses who observed the
 
 *526
 
 defendant immediately after his accident, were unable to tell whether or not he was under the influence of an intoxicant or whether his condition was the result of the injuries he had just sustained, we do not see how the jury could do so."
 
 Id
 
 .
 

 As in the first issue on appeal, we agree that there may have been more evidence of impairment in the cases cited by defendant. Yet, we must judge the facts of the present case, which provide more evidence of impairment than in
 
 Hough
 
 .
 

 Here the evidence was that defendant pulled into a handicap spot, Officer Sykes noticed a moderate odor of alcohol coming from defendant's breath, defendant had red and glassy eyes, defendant admitted to consuming alcohol hours before, Officer Sykes noted five out of six indicators of impairment on the HGN test, and Officer Sykes believed that defendant was impaired. Viewing these facts in the light most favorable to the State, and despite other evidence tending to show
 
 *504
 
 defendant was driving properly and was steady on his feet, we hold the evidence in this case was sufficient to survive defendant's motions to dismiss.
 

 3.
 
 Final Argument to the Jury
 

 In defendant's final argument on appeal, defendant contends the trial court erred in denying him the final closing argument to the jury.
 

 Pertinent to this issue, Rule 10 of the North Carolina General Rules of Practice for the Superior and District Courts provides that "if no evidence is introduced by the defendant, the right to open and close the argument to the jury shall belong to him." N.C. Super. and Dist. Ct. R. 10 (2016).
 

 In this case, defendant did not call any witnesses or put on any evidence after the State concluded its presentation of the case. Yet, defendant did cross-examine the State's only witness and sought to play a video of the entire stop recorded by the officer's in-car camera during cross-examination. Defendant argued the video was illustrative. The State argued playing the video constituted introducing evidence. After argument on the issue, the trial court noted that it was a "difficult call" and indicated to the parties that it would make its final determination of whether the video constituted new evidence after the video had been played. The parties agreed, with the defense further indicating that "[they] intend to play [the video] one way or the other and understand the potential consequences." The video was marked as "Defendant's Exhibit 1" and played for the jury, with defendant stopping the video at times to ask questions of the State's witness. Upon the conclusion of the
 
 *527
 
 defense's cross-examination and the close of the State's evidence, the trial court heard further arguments by the parties on whether the video constituted new evidence. The trial court again noted it was a "tough call," but ultimately determined that playing the video to the jury constituted putting on evidence, resulting in defendant's loss of the final argument to the jury.
 

 The question we must address is whether admitting the entire video of the stop during cross-examination constituted introducing evidence. In
 
 State v. Hennis
 
 ,
 
 184 N.C.App. 536
 
 ,
 
 646 S.E.2d 398
 
 ,
 
 disc. rev. denied
 
 ,
 
 361 N.C. 699
 
 ,
 
 653 S.E.2d 148
 
 (2007), this Court summarized the applicable law as follows:
 

 In
 
 State v. Shuler
 
 ,
 
 135 N.C.App. 449
 
 ,
 
 520 S.E.2d 585
 
 (1999), this Court determined that evidence is "introduced," within the meaning of Rule 10, when the cross-examiner either formally offers the material into evidence, or when the cross-examiner presents new matter to the jury that is not relevant to the case.
 
 Id
 
 . at 453,
 
 520 S.E.2d at
 
 588 ;
 
 see also
 

 State v. Wells
 
 ,
 
 171 N.C.App. 136
 
 , 138,
 
 613 S.E.2d 705
 
 , 706 (2005) (quoting
 
 Shuler
 
 ,
 
 135 N.C.App. at 453
 
 ,
 
 520 S.E.2d at
 
 588 ). However, "[n]ew matters raised during the cross-examination, which are relevant, do not constitute the 'introduction' of evidence within the meaning of Rule 10."
 
 Shuler
 
 ,
 
 135 N.C.App. at 453
 
 ,
 
 520 S.E.2d at 588
 
 . Most recently, in
 
 State v. Bell
 
 ,
 
 179 N.C.App. 430
 
 ,
 
 633 S.E.2d 712
 
 (2006), this Court stated that evidence is introduced during cross-examination when: "(1) it is 'offered' into evidence by the cross-examiner; or (2) the cross-examination introduces new matter that is not relevant to any issue in the case."
 
 Id
 
 . at 431,
 
 633 S.E.2d at
 
 713 (citing
 
 Shuler
 
 ,
 
 135 N.C.App. at 452-53
 
 ,
 
 520 S.E.2d at
 
 588 ).
 

 Id
 
 . at 537-38,
 
 646 S.E.2d at 399
 
 . In
 
 Hennis
 
 , this Court addressed "whether, under the first test in
 
 Bell
 
 , the defendant 'offered' [a] diagram and incident report into evidence during his cross-examination."
 
 Id
 
 . at 538,
 
 646 S.E.2d at 399
 
 . This Court further explained that "[i]n
 
 State v. Hall
 
 ,
 
 57 N.C.App. 561
 
 ,
 
 291 S.E.2d 812
 
 (1982), this Court set forth the following test to determine whether evidence is 'offered' within the meaning of Rule 10: 'whether a party has offered [an object] as substantive evidence or so that the jury may examine it and determine whether it illustrates, corroborates, or impeaches the testimony of the witness.' "
 
 Hennis
 
 ,
 
 184 N.C.App. at 538
 
 ,
 
 646 S.E.2d at 399
 
 (quoting
 
 Hall
 
 ,
 
 57 N.C.App. at 564
 
 , 291 S.E.2d at 814 ). Applying the above law, this Court granted the
 
 Hennis
 

 *528
 
 defendant a new trial, holding the defendant did not offer evidence under either test articulated in
 
 Bell
 
 .
 
 Id
 
 . at 539,
 
 646 S.E.2d at 400
 
 . This Court reasoned that the exhibits in
 
 Hennis
 
 related directly to the State's witness'
 
 *505
 
 testimony on direct examination and did not constitute substantive evidence-the diagram was used to merely illustrate the State's witness' prior testimony and the incident report was not published to the jury as substantive evidence, nor given to the jury to examine.
 
 Id
 
 .
 

 In the present case, defendant now analogizes the facts of his case to
 
 Hennis
 
 and asserts "[t]he videotape was used by the defendant to illustrate Officer Sykes' account of these events. It was not admitted as substantive evidence and it was directly relevant to Officer Sykes' testimony[.]" We are not convinced.
 

 Although Officer Sykes had provided testimony describing the stop that was shown in the video, we agree with the trial court that the video evidence in this case goes beyond the testimony of the officer, and is different in nature from evidence presented in other cases that was determined not to be substantive. Here, the playing of the video of the stop allowed the jury to hear exculpatory statements by defendant to police beyond those testified to by the officer and introduced evidence of flashing police lights, that was not otherwise in the evidence, to attack the reliability of the HGN test. This evidence was not merely illustrative. Moreover, the video allowed the jury to make its own determinations concerning defendant's impairment apart from the testimony of the officer and, therefore, amounted to substantive evidence. Consequently, we hold the trial court did not err in determining defendant put on evidence and in denying defendant the final argument to the jury.
 

 III.
 
 Conclusion
 

 For the reasons discussed above, we find the trial court did not err in denying defendant's motions to suppress or dismiss, or in denying defendant the final closing argument to the jury.
 

 NO ERROR.
 

 Judges BRYANT and STEPHENS concur.